# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**Regis Smith.**

*Plaintiff*,

v.

**Williams, Rush & Associates, LLC, and Sean Williams,**

*Defendants*.

Case No:   8:21-cv-1757

**JURY TRIAL DEMANDED**

## COMPLAINT AND JURY TRIAL DEMAND

**COMES NOW** the Plaintiff, **Regis Smith** ("**Mr. Smith**"), by and through his attorneys, Seraph Legal, P.A., and complains of the Defendants, **Williams, Rush & Associates, LLC** ("**WRA**"), **Sean Williams** ("**Williams**") (collectively, "**the Defendants**") and states as follows:

## PRELIMINARY STATEMENT

1. This is an action brought by Mr. Smith against WRA for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et. seq.* ("**FDCPA**"), the Florida Consumer Collection Practices Act, Section 559.55, Florida Statutes *et. seq.* ("**FCCPA**").

## JURISDICTION AND VENUE

2. This Court has jurisdiction of Mr. Smith's FDCPA claims pursuant to 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

3. This Court has supplemental jurisdiction for Mr. Smith's state law claim pursuant to 28 U.S.C. § 1367 and Section 559.77(1) Florida Statutes.

4. Venue is proper in Middle District of Florida, pursuant to 28 U.S.C. §1391(b)(2), because the events giving rise to this cause of action occurred within this District.

## PARTIES

5. **Mr. Smith** is a natural person residing in Hillsborough County, Florida and is a "consumer" as defined by the FDCPA, 15 U.S.C. §1692a(3), the FCCPA, and Section 559.55(8), Florida Statutes.

6. **WRA** is a Texas limited liability corporation with a primary business address of 4144 N. Central Expressway, Ste. 945, Dallas, TX 75204.

7. WRA is registered as a Foreign Corporation in the State of Florida; its registered agent is **Northwest Registered Agent, LLC, 3030 N. Rocky Point Dr., Suite 150A, Tampa, FL 33607.**

8. **Williams** is the managing member and founder of WRA, and, according to his LinkedIn profile, has been involved in the collections industry since 2003.

9. Williams is involved in the day-to-day operations of WRA, and is the individual responsible for the determination of, and implementation of, the policies and procedures of WRA.

10. Williams has the ability review any collection communications made by WRA.

11. Williams is responsible for reviewing any and all regulations affecting his business, or alternatively, is responsible for hiring personal to ensure the company he manages is in compliance with those regulations.

12. Williams is also aware of any complaints filed against WRA through the Better Business Bureau, the Consumer Financial Protection Bureau, any state Attorney General office, or court of law.

13. The Defendants are "debt collectors" within the meaning of the FDCPA and FCCPA, 15 U.S.C. § 1692a(6) and Section 559.55(7), Florida Statutes, respectively, in that the Defendants use an instrumentality of commerce, including the U.S. mail and / or telephone, interstate and within the state of Florida, for their business, the principal purpose of which is the collection of debts, and/or they regularly collect or attempt to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

14. WRA was licensed to collect consumer debts and held a Florida Consumer Collection Agency License ("**CCA License**") issued by the Florida

Office of Financial Regulations, license number CCA9903284; the CCA License expired on December 31, 2014 and has not been renewed or reinstated as of the date of this filing. **SEE PLAINTIFF'S EXHIBIT A.**

15. Section 559.553(1), Florida Statutes, states: "A person may not engage in business in this state as a consumer collection agency or continue to do business in this state as a consumer collection agency without first registering in accordance with this part, and thereafter maintaining a valid registration."

## FACTUAL ALLEGATIONS

16. Supposedly, Mr. Smith incurred a debt related to tuition expenses at Tampa Truck Driving School ("**Tampa Truck**") in Tampa, Florida (the "**alleged Debt**" or "**Debt**").

17. The Debt arose from personal educational expenses, and therefore meets the definition of "debt" under the FDCPA, 15 U.S.C. § 1692a(5), and the FCCPA, Section 559.55(6), Florida Statutes.

18. Within the past year, WRA began collecting the debt alleged as owed.

19. The WRA collection agent stated that she was calling from WRA, and that the call was an attempt to collect a debt.

20. The WRA agent also claimed that WRA could cause Mr. Smith's driver's license to be suspended for non-payment of debt, and WRA would also cause a negative entry to appear on his "Drive-A-Check" report from HireRight.

21. More commonly called a "DAC report," the Drive-a-Check tool by HireRight is utilized by companies which employ professional drivers to screen prospective applicants.

22. The DAC report provides details on drug and alcohol problems, accidents, length of time employed in professional driving, eligibility for rehire with past employers, and other relevant information that is dispositive towards hiring.

23. A great number of trucking companies and other entities which employ professional drivers utilize DAC reports to pre-screen prospective applicants, and therefore negative information on an applicant's DAC report creates significant impediments to obtaining future employment.

24. A DAC report does not, however, contain information about consumer debts or loans.

25. Therefore, the debt WRA's agent sought to collect from Mr. Smith could never be placed on his DAC Report.

26. Beyond this, WRA is not a trucking company, and therefore cannot furnish any information to HireRight's DAC database.

27. At no point did WRA intend, much less have any ability to, report any information to HireRight's DAC database.

28. The phrase "DAC report" is not well known to the general population, but it is critically important to employees within the professional driving industry.

29. The Defendant's intentionally used this industry-specific and relativity obscure terminology in order to frighten consumer's like Mr. Smith into paying the debt.

30. WRA empty threats to report negative DAC information were simply a ruse to scare consumers like Mr. Smith into paying debts.

31. Many consumers, and especially an unsophisticated one, would be cajoled into paying a debt, even if disputed, if a debt collector appeared to have the knowledge, ways and means to electronically blacklist them from being able to work in the industry again.

32. WRA also had no ability, nor intention, to cause Mr. Smith's driver's license to be suspended.

33. No Florida law allows for a consumer's driver's license to be suspended for an unsecured consumer credit transaction like a private school's tuition.

34. The Defendants thus intentionally and willfully made false representations about what legal rights could be invoked and enforced in the event of nonpayment.

35. The Defendants are not attorneys and had no authority, nor intention, of suing Mr. Smith for any alleged unpaid debt.

36. Yet, WRA's name – Williams, Rush & Associates – effectively mimics the nomenclature commonly used by law firms, and would *sound like* a law firm to an unsophisticated consumer, especially when accompanied by corresponding threats of wage garnishment, etc.

37. Prior to March 17, 2021, Mr. Smith advised WRA's agent that he was represented by undersigned counsel regarding this debt.

38. On March 17, 2021, WRA called Mr. Smith directly in an attempt to collect the debt.

39. Once again, on April 16, 2021, WRA called Mr. Smith directly and attempted to collect the debt using the tactics described herein.

40. At all times relevant, the Defendants lacked a valid Florida CCA License, a prerequisite to legally collect consumer debts in Florida.

41. Defendants attempted to collect the Debt, which originated from a college in Tampa, Florida, after it was attended by a Florida resident, despite lacking a valid Florida CCA License.

42. WRA did not mail, within five days of initial communication, written notice containing: (1) the amount of the Debt; (2) the name of the creditor to whom the Debt is owed; (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the Debt, or any portion thereof, the Debt will be assumed to be valid by the debt collector; (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the Debt, or any portion thereof, is disputed, the debt collector will obtain verification of the Debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; or, (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

43. Mr. Smith has hired the aforementioned law firm to represent him in this matter and is obligated to pay its reasonable fees.

## COUNT I
## DEFENDANTS' VIOLATIONS OF THE FDCPA

44. Mr. Smith adopts and incorporates paragraphs 1 – 43 as if fully restated herein.

45. The Defendants violated **15 U.S.C. § 1692e and 1692e(10)** by making false and/or deceptive representations in connection with the collection of a debt and/or to obtain information about a consumer when WRA:

   (a) claimed it could collect a debt which originated in Tampa, Florida from a Florida resident without being legally licensed to collect debt in Florida;

   (b) claimed that they could cause a negative entry to appear on Mr. Smith's DAC report, when the Defendants had no such ability or intention.

46. The Defendants violated **15 U.S.C. § 1692e(2)(a)** when they made a false representation about the character, amount, or legal status of the Debt by:

   (a) claimed it could collect a debt which originated in Tampa, Florida from a Florida resident without being legally licensed to collect debt in Florida;

   (b) claimed that they could cause a negative entry to appear on Mr. Smith's DAC report, when the Defendants had no such ability or intention;

   (c) that the Defendants could cause Mr. Smith's Florida driver's license to be suspended for non-payment of an unsecured debt; and

47. The Defendants violated **15 U.S.C. § 1692e(5)** when they, in phone calls and via their website, threatened action not intended to be taken, e.g. legal action to collect the Debt and garnishment of wages to effect validation of a debt, wage garnishment without due process, and the appearance of a negative entry on a DAC report.

48. The Defendants violated **15 U.S.C. § 1692e(5)** when they claimed they could cause Mr. Smith's driver's license to be suspended for non-payment of an unsecured debt.

49. The Defendants violated **15 U.S.C. § 1692c(a)(2)** when they attempted to collected the Debt from Mr. Smith directly after receiving notice that he was represented by the undersigned counsel regarding the Debt.

50. The Defendants violated **15 U.S.C. § 1692f** when they used unfair and/or unconscionable means to collect or attempt to collect a debt, when Williams, as managing member of WRA, instructed his agents to threaten negative reporting to DAC – something Williams knows is impossible for WRA to actually do, yet nonetheless effective in collecting debt, since the consumer would believe his reputation would be permanently tarnished by such a report.

51. The Defendants violated **15 U.S.C. § 1692g(a)** when they failed to mail written notice to Mr. Smith within five days of initial communication, stating:

(a) the amount of the Debt;

(b) the name of the creditor to whom the Debt is owed;

(c) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the Debt, or any portion thereof, the Debt will be assumed to be valid by the debt collector;

(d) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the Debt, or any portion thereof, is disputed, the debt collector will obtain verification of the Debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; or,

(e) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

52. The Defendants' actions render them liable for the above-stated violations of the FDCPA, and Mr. Smith is therefore entitled to statutory damages not to exceed $1,000.00 as well as other relief.

**WHEREFORE,** Mr. Smith respectfully requests this Honorable Court enter judgment against the Defendants, jointly and severally, and for her as follows:

    a.    Statutory damages of **$1,000.00**, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

    b.    Actual damages, pursuant to 15 U.S.C. § 1692k(a)(1);

    c.    Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

    d.    Such other relief that this Court deems just and proper.

    a.    Such other relief that this Court deems just and proper

## COUNT II
## DEFENDANTS' VIOLATIONS OF THE FCCPA

53. Mr. Smith adopts and incorporates paragraphs 1 – 43 as if fully restated herein.

54. The Defendants violated Section **559.72(9)**, Florida Statutes, when they asserted rights which do not exist, which the Defendants knew did not exist, specifically: (1) the right to collect a consumer debt in Florida without first acquiring a CCA License from the Florida Office of Financial Regulation, (2)

the right to cause Mr. Smith's driver's license to be suspended, and (3) the right to report negative information to DAC, which WRA has no legal ability to do.

55. The Defendants violate Section 559.72(18), Florida Statues, when they attempted to collect the Debt directly from Mr. Smith after receiving notice that he was represented by undersigned counsel regarding the Debt.

56. The Defendants' actions were willful and intentional in that they were part of a strategy designed to maximize their profits at the expense of the consumer and his family.

57. By their conduct, the Defendants are liable for the above-stated violations of the FCCPA.

**WHEREFORE,** Mr. Smith respectfully requests this Honorable Court enter judgment against the Defendants, jointly and severally, and otherwise solely, for:

  a.  Statutory damages of **$1,000.00** pursuant to Section 559.77(2), Florida Statutes;

  b.  Actual damages pursuant to Section 559.77(2), Florida Statutes;

  c.  Punitive damages for the Defendants' blatantly illegal and reprehensible conduct pursuant to Section 559.77(2), Florida Statutes;

d. Injunctive relief preventing the Defendants from attempting to collect the alleged debt from Mr. Smith pursuant to Section 559.77(2), Florida Statutes;

e. Reasonable costs and attorney's fees pursuant to pursuant to Section 559.77(2), Florida Statutes; and,

f. Such other relief that this Court deems just and proper.

## JURY TRIAL DEMANDED

Mr. Smith demands a jury trial on all issues so triable.

Respectfully submitted this July 20, 2021, by:

/s/ *Thomas M. Bonan*
**Thomas M. Bonan, Esquire.**
**FBN: 118103**
**SERAPH LEGAL, P. A.**
1614 N 19th Street
Tampa, FL 33605
Tel: 813-321-2347
Fax: 855-500-0705
Tbonan@SeraphLegal.Com
Counsel for Plaintiff